**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

In re:

MONTREAL, MAINE & ATLANTIC CANADA CO.,

      Foreign Applicant in Foreign Proceeding.

Chapter 15
Case No. 15-_____

**VERIFIED PETITION FOR RECOGNITION OF**
**FOREIGN PROCEEDING AND RELATED RELIEF**
**(With Memorandum of Law)**

Richter Advisory Group Inc. is the court-appointed monitor (the "Monitor") and

authorized foreign representative of Montreal, Maine & Atlantic Canada Co. ("MMA Canada")

in a proceeding (the "Canadian Proceeding") under Canada's *Companies' Creditors*

*Arrangement Act*, R.S.C. 1985, c. C-36 (the "CCAA"), as amended, pending before the Québec

Superior Court of Justice (Commercial Division) (the "Québec Court").

The Monitor has commenced this chapter 15 case ancillary to the Canadian Proceeding

and respectfully files this Verified Petition for Recognition of Foreign Proceeding and Related

Relief (the "Chapter 15 Petition") with the documentation required by sections 1504 and 1515 of

title 11 of the United States Code (the "Bankruptcy Code") seeking the entry of an order:  (a)

recognizing the Canadian Proceeding as a "foreign main proceeding" pursuant to section 1517 of

the Bankruptcy Code; (b) giving full force and effect in the United States to the *Initial Order* of

the Québec Court dated August 8, 2013, including any extensions or amendments thereof (the

"Initial Order"); and (c) granting such other and further relief as is appropriate under the

circumstances.  In support of the Chapter 15 Petition, the Monitor respectfully states as follows:[1]

---

[1]  The information contained herein is based on a review of unaudited financial information provided to
the Monitor by MMA Canada and its employees as well as information provided by the Chapter 11
Trustee to Montreal Maine & Atlantic Railway Ltd. and the Chapter 11 Trustee's professionals.  The

## JURISDICTION AND VENUE

### The Court has Jurisdiction to Recognize the Canadian Proceeding and Grant the Relief Requested.

1.      The United States District Court for the District of Maine (the "District Court") has original but not exclusive jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157 and Rule 83.6 of the District Court's local rules, the District Court has authority to refer and has referred this chapter 15 case to this Court.

2.      A case under chapter 15 is a "case" under the Bankruptcy Code.  Recognition of foreign proceedings and other matters under chapter 15 of the Bankruptcy Code have been expressly designated as core proceedings pursuant to 28 U.S.C. § 157(b)(2)(P).

3.      Venue is proper in this district.  The chapter 11 bankruptcy case of MMA Canada's parent company, Montreal Maine & Atlantic Railway Ltd. ("MMA"), is pending in this District.  MMA and MMA Canada have been named as co-defendants in various suits arising out of the Derailment, and MMA and MMA Canada together operated a shortline freight railroad system that had 510 route miles, which extended through Maine and Vermont and into Quebec, Canada.  Claims arising out of the Derailment and asserted against MMA will be administered or otherwise addressed during the course of the chapter 11 case; thus, claimants are already familiar, or will become familiar with this venue and, indeed, many such claimants have already retained counsel to represent them in this venue.  Administering MMA Canada's chapter 15 case in this venue would be convenient for claimants and other parties in interest who have already appeared before this Court, many of whom have asserted identical claims against both MMA and MMA Canada.  Therefore, venue in this district is consistent with the interests of justice and the

---

Monitor has not conducted an audit or investigation of the information which has been provided to it by MMA Canada and, accordingly, no opinion is expressed regarding the accuracy, reliability or completeness of the information contained within this Chapter 15 Petition.

convenience of the parties, having regard to the relief sought by the Chapter 15 Petition, as provided by 28 U.S.C. § 1410.

4.      The statutory predicates for the relief requested herein are sections 1504, 1515, 1516, 1517, and 1520 of the Bankruptcy Code.

## BACKGROUND

5.      For a more complete description of MMA Canada's business, corporate organization, capital structure, and circumstances leading to the Canadian Proceeding and the entry of the Plan Sanction Order, the court is respectfully referred to the documents annexed as exhibits to the Declaration of Roger A. Clement, Jr. (the "Clement Declaration") filed contemporaneously herewith.  In addition, all of the pleadings, Orders, and Monitor's reports filed in connection with the Canadian Proceeding may be viewed at the Monitors website: http://www.richter.ca/en/folder/insolvency-cases/m/montreal-maine-and-atlantic-canada-co.

### A.      Business and Structure of MMA Canada

6.      MMA Canada is a subsidiary of MMA, a Delaware corporation headquartered in Hermon, Maine, which operated rail lines in Maine and Vermont.  MMA Canada is incorporated under the laws of the province of Nova Scotia, and specifically the *Companies Act*, R.S., c. 81, as an unlimited liability company.  MMA Canada has its registered office at 1959 Upper Water Street, Suite 800, Halifax, Nova Scotia, but, does not operate or hold any assets there.  Before it sold its assets on June 30, 2014, all of MMA Canada's operations occurred in Quebec, Canada.  All of its physical assets and employees were located there.  MMA Canada currently has claims to funds and causes of action located in the United States, as described below.

**B.      Events Leading to the Canadian Proceeding**

7.      On July 6, 2013, an unmanned eastbound MMA/MMA Canada train with 72

carloads of crude oil and 5 locomotive units, derailed in Lac-Mégantic, Quebec (the

"Derailment"). The transportation of the crude oil had begun in New Town, North Dakota, by the

Canadian Pacific Railway Company ("CP") and MMA Canada later accepted the rail cars from

CP at CP's yards in Montréal.  The crude oil was to be transported on the Saint-Jean-Lac-

Mégantic line through Maine to its ultimate destination in Saint John, New Brunswick.

8.      The Derailment set off several massive explosions, destroyed part of downtown

Lac-Mégantic, resulting in the death of 47 people.[2]  A large quantity of oil was released into the

environment, necessitating an extensive cleanup effort which is still ongoing. As a result of the

Derailment and the related injuries, deaths, and property damage, lawsuits were filed against

MMA and MMA Canada both in the United States and Canada.

9.      Accordingly, MMA Canada, along with MMA, faced significant claims for

wrongful death, property and environmental damage, among other claims.  Meanwhile, although

MMA Canada deployed efforts to maintain railway transportation services where possible to its

customers in Québec, its railway transportation services were greatly reduced in Québec, and

were reduced by MMA in the United States, as a result of the inability to transit through Lac-

Mégantic into Maine (and vice-versa), greatly decreasing MMA and MMA Canada's cash flow.

10.      Faced with significant claims resulting from the Derailment, and in light of the

reduced service capacity of both MMA and MMA Canada as a result of the Derailment and the

resulting decrease in cash flow, MMA Canada and MMA filed reorganization proceedings in

---

[2]  A forty-eighth death resulted when a volunteer fireman who had worked in the post-Derailment
recovery effort committed suicide.  Accordingly, a total of 48 decedents' estates may hold claims, *inter
alia*, for wrongful death.

Canada and the United States, respectively.  On August 6, 2013, MMA Canada filed the *Petition for Issuance of an Initial Order*, later amended on August 8, 2013, on which date the Québec Court entered an *Initial Order*[3] commencing the Canadian Proceeding and granting an initial stay (through September 6, 2013) of actions against MMA Canada and its property, its affiliates, the directors and officers of MMA Canada and its affiliates, and the insurers of all of the foregoing.  Initial Order at ¶ 7.  Likewise, in the United States, MMA filed a Chapter 11 petition in this Court on August 7, 2013, commencing case styled In re Montreal Maine & Atlantic Railway, Ltd., Case No. 13-10670 (the "Chapter 11 Case").  On August 21, 2013, Robert J. Keach was appointed as the Chapter 11 trustee ("Trustee") in the MMA case.  Both MMA Canada and MMA filed their respective petitions to ensure that the best interests of all stakeholders and potential stakeholders, including the individuals asserting claims related to the Derailment, are realized, through a plan that will maximize the value of assets for all creditors and potential creditors.  The Québec Court extended the initial stay as follows:

| Order | Order Date | Amended Stay Period Termination Date |
|---|---|---|
| *Order* | September 4, 2013 | October 9, 2013 |
| *Order re Motion for a Second Order Extending the Stay Period* | October 9, 2013 | January 28, 2014 |
| *Order Regarding Motion for a Third Order Extending the Stay Period* | January 23, 2014 | February 11, 2014 |
| *Order Regarding Motion for a Fourth Order Extending the Stay Period* | February 11, 2014 | February 26, 2014 |
| *Order Regarding Motion for a Fifth Order Extending the Stay Period* | February 25, 2014 | March 12, 2014 |
| *Order Regarding Motion for a Sixth Order Extending the Stay Period* | March 12, 2014 | April 30, 2014 |
| *Order Regarding Motion for a Seventh Order Extending the Stay Period* | April 29, 2014 | June 30, 2014 |
| *Order Extending the Stay Period* | June 30, 2014 | September 30, 2014 |

---

[3]  The *Petition for Issuance of an Initial Order* and the *Initial Order* are annexed to the Clement Declaration.

| *Order for a Ninth Extension of the Stay Period Until November 24, 2014* | September 24, 2014 | November 24, 2014 |
|---|---|---|
| *Order for a Tenth Extension of the Stay Period Until January 12, 2015* | November 24, 2014 | January 12, 2015 |
| *Order for an Eleventh Extension of the Stay Period Until May 15, 2015* | January 12, 2015 | May 15, 2015 |
| *Order for the Convening, Holding and conduct of the Creditors Meeting in for a Twelfth Extension of the Stay until December 15, 2015* | April 15, 2015 | December 15, 2015 |

**C.**      **Cross-Border Insolvency Proceedings**

11.      Shortly after the commencement of the cases, the Trustee and MMA Canada together with the Monitor negotiated a cross-border protocol to be implemented in both the Chapter 11 Case and the Canadian Proceeding, which enhanced the coordination and harmonization of proceedings in the two cases.

12.      On September 3, 2013, MMA Canada filed the *Motion for an Order Extending the Stay Period and to Approve a Cross-Border Insolvency Protocol* and on September 4, 2013, the Québec Court entered an *Order* granting the foregoing *Motion*.[4]  Similarly, on August 30, 2013, the Trustee filed with this Court a *Motion for Order Adopting Cross-Border Insolvency Protocol* [D.E. 126], which *Motion* was granted by *Order* dated September 4, 2013 [D.E. 168].

**D.**      **The Sale Process**

13.      MMA Canada and the Trustee, together with the Monitor and in consultation with the Federal Railroad Administration, determined that a sale of the assets of both MMA and MMA Canada, on a going concern basis, was in the best interests of creditors of both debtors.  In order to preserve the going concern value of MMA and MMA Canada's assets, the sale had to occur on an expedited basis.

---

[4]  The *Motion for an Order Extending the Stay Period and to Approve a Cross-Border Insolvency Protocol* and the *Order* granting the foregoing *Motion* are annexed to the Clement Declaration.

-6-

14.     MMA Canada and the Trustee together with the Monitor, held discussions and negotiations with potential purchasers to sell substantially all of MMA's assets in conjunction with a sale of substantially all of the assets of MMA Canada (the "Sale").  These discussions and negotiations eventually led to the selection of Railroad Acquisition Holdings LLC ("RAH") as a stalking horse bidder in an auction for the Sale.

15.     On December 12, 2013, the Trustee filed a motion for approval of bid procedures and a motion for authority to sell substantially all of its assets under an asset purchase agreement between the Trustee, MMA Canada, and RAH.

16.     On December 19, 2013, the Bankruptcy Court entered an order approving the bid procedures.

17.     Similarly, on December 12, 2013, MMA Canada filed with the Québec Court a motion for the authority to sell its assets pursuant to the asset purchase agreement with RAH.  On December 16, 2013, MMA Canada filed with the Québec court a motion seeking approval of bid procedures.

18.     On December 19, 2013, the Québec Court entered an order approving the bid procedures, including a sale auction.

19.     On January 19, 2014, MMA Canada filed a motion seeking approval of the sale of its assets and for a vesting order.  The auction was held on January 21, 2014.  The bid of the stalking horse-RAH was declared the successful bid.  On January 23, 2014, the Québec Court entered the *Approval and Vesting Order* approving the sale of the MMA Canada assets as part of the sale of the MMA's Assets.

8284969_11.DOCX

20.     The sale of MMA's assets closed on May 15, 2014, and upon final regulatory

approval, the sale of the MMA Canada assets closed on June 30, 2014.  In total, the Sale resulted

in a $14,250,000 net payment to MMA and MMA Canada.

21.     MMA Canada has not operated a railroad, or transported persons or goods over a

railroad, or owned or leased any track or other railroad assets since June 30, 2014.[5]

### E.      The CCAA Plan Process

22.     On January 9, 2015, MMA Canada filed a *Motion for an Eleventh Order

Extending the Stay Period*, including a draft *Plan of Compromise and Arrangement* (the "Draft

CCAA Plan").  MMA Canada sought additional time to finalize settlement agreements with

various parties, as well as sufficient time under the stay to obtain approval of and execute the

Draft CCAA Plan.  The Draft CCAA Plan was crafted to work in conjunction with MMA's

Chapter 11 Plan, particularly with respect to distributions to victims of the Derailment.

23.     On January 12, 2015, the Québec Court approved the motion for the Eleventh

Order Extending the Stay.  On March 31, 2015, MMA Canada filed the *Plan of Compromise and

Arrangement Dated March 31, 2015* (as later amended, the "CCAA Plan").

24.     The Trustee filed the Trustee's Plan of Liquidation dated March 31, 2015, later

amended by the Trustee's First Amended Plan of Liquidation dated July 7, 2015 (as amended

and revised, the "Chapter 11 Plan").

25.     On April 10, 2015, MMA Canada filed a *Motion for an Order for the Convening,

Holding and Conduct of a Creditors Meeting and for a Twelfth Extension of the Stay Period*.

---

[5]  Pursuant to a Decision of the Canadian Transportation Authority dated March 28, 2014, MMA
Canada's Certificate of Fitness to engage in rail operations ended on June 30, 2014**.**  A copy of the
Decision may be viewed at: http://www.richter.ca/en/folder/insolvency-cases/m/montreal-maine-and-
atlantic-canada-co.

26.      On April 15, 2015, the Québec Court entered an *Order for the Convening,
Holding and Conduct of a Creditors Meeting and for a Twelfth Extension of the Stay Period until
December 15, 2015.*

27.      On May 6, 2015, CP filed pleadings arguing that the Québec Court lacked
jurisdiction to hear the MMA Canada case under the CCAA and opposing the sanction of the
CCAA Plan.  On July 13, 2015, the Québec Court entered an order overruling CP's objections.

28.      On June 8, 2015, MMA Canada filed an *Amended Plan of Compromise and
Arrangement Dated June 8, 2015* (as amended and revised, the "CCAA Plan").

29.      On June 17, 2015, the Québec Court held a hearing on MMA Canada's motion for
approval of the CCAA Plan.  On July 13, 2015, the Québec Court entered a *Judgment on the
Motion for Approval of Plan of Arrangement* approving the CCAA Plan (the "Plan Sanction
Order").[6]

### F.      The Settlement Agreements

30.      The Monitor, the Trustee, MMA, and MMA Canada have worked collectively
since the commencement of the cases to engage in settlement discussions with various parties
identified as potentially liable for damages arising from the Derailment.  As a result of these
negotiations, approximately 25 entities or groups of affiliated entities have entered into
settlement agreements, whereby the "Released Party" (as defined in those agreements) will
contribute to a settlement fund in exchange, *inter alia*, for a full and final release of all claims
arising out of the Derailment, including any claims for contribution and/or indemnity (including
contractual indemnity) asserted by third parties, as well as the protection of a global injunction
barring assertion of any Derailment-related claims against the Released Parties.  The settlement

---

[6]  The CCAA Plan and the Plan Sanction Order are annexed to the Clement Declaration.

fund is, as of the date hereof, approximately (CDN) $431 million.[7]  The CCAA Plan, *inter alia*, implements the settlement fund.

31.     As of the filing of this Petition, under the CCAA Plan, the Released Parties include all parties who were named in lawsuits brought by the Trustee arising out of the Derailment, other than CP.  CP is the sole remaining "Non-Released Party."  To the extent a settlement is not reached with CP, the Monitor understands that litigation will commence and/or continue against CP to recover damages.

### G.     MMA Canada's Property in the United States

32.     MMA Canada's property in the United States consists of, *inter alia*, a retainer paid to the Monitor's counsel in the United States, which retainer is held by counsel in a United States bank account, a proof of claim filed against the MMA bankruptcy estate, a claim to cash being held on deposit by the Trustee in the United States, rights in certain claims against CP under Federal law in the United States, rights in certain assigned claims and causes of action against U.S.-based defendants, as well as assigned rights in insurance policies issued and payable within the United States.  These property interests are more fully described later in this Verified Petition.

### RELIEF REQUESTED

33.     By this Chapter 15 Petition, the Monitor seeks an order: (a) recognizing the Canadian Proceeding as a "foreign main proceeding" pursuant to section 1517 of the Bankruptcy Code and as defined in section 1502(4) of the Bankruptcy Code, or, in the alternative, as a "foreign nonmain proceeding;" (b) giving full force and effect in the United States to the Initial Order; (c) granting relief afforded foreign main proceedings automatically upon recognition,

---

[7]  Canadian funds are calculated using and exchange rate of approximately $1.25 Canadian to $1.00 U.S., which was the approximate rate as of June 8. 2015.  The actual amount available for distribution will fluctuate along with the exchange rate.

-10-

pursuant to section 1520 of the Bankruptcy Code, including, without limitation, imposition of the

stay under section 362 and application of section 363 of the Bankruptcy Code; or, alternatively,

if not as of right under section 1520 of the Bankruptcy Code, then pursuant to sections 1521,

1507, and 105(a) of the Bankruptcy Code, as applicable; and (d) granting such other and further

relief as is appropriate under the circumstances.

## <u>GROUNDS FOR RELIEF</u>

34.     The purpose of the Canadian Proceeding is to facilitate the reorganization of

MMA Canada for the benefit of all creditors, including those individuals and entities that have

suffered losses as a result of the Derailment.  As a proceeding under the CCAA in the Québec

Court, the Canadian Proceeding is entitled to the recognition and relief provided by chapter 15 of

the Bankruptcy Code.  Further, the Monitor believes that granting the relief sought herein will

best ensure the fair and efficient administration of the Canadian Proceeding consistent with the

principles set forth in chapter 15 of the Bankruptcy Code.

35.     Chapter 15 applies where, as here, assistance is sought in the United States by a

foreign representative, such as the Monitor, in connection with a foreign proceeding.  11 U.S.C.

§ 1501(b)(1).  The Monitor asks this Court to give effect in the United States to the Initial Order

for the purpose of facilitating the liquidation of MMA Canada for the benefit of all creditors.

This relief is authorized by section 1520 of the Bankruptcy Code.

36.     Section 1517 of the Bankruptcy Code provides that

"Subject to section 1506 . . . an order recognizing a foreign proceeding ***shall***
be entered if—
   (1) such foreign proceeding for which recognition is sought is a foreign main
       proceeding or foreign nonmain proceeding within the meaning of section
       1502;
   (2) the foreign representative applying for recognition is a person or body; and
   (3) the petition meets the requirements of section 1515."

-11-

11 U.S.C. § 1517(a) (emphasis added).

37.     Section 1515 of the Bankruptcy Code provides that

(a)     A foreign representative applies to the court for recognition of a foreign

proceeding in which the foreign representative has been appointed by filing a

petition for recognition.

(b)     A petition for recognition shall be accompanied by—

(1) a certified copy of the decision commencing such foreign proceeding and
appointing the foreign representative;
(2) a certificate from the foreign court affirming the existence of such foreign
proceeding and of the appointment of the foreign representative; or
(3) in the absence of evidence referred to in paragraphs (1) and (2), any other
evidence acceptable to the court of the existence of such foreign proceeding and
of the appointment of the foreign representative.

(c)     A petition for recognition shall also be accompanied by a statement identifying all

foreign proceedings with respect to the debtor that are known to the foreign

representative.

(d)     The documents referred to in paragraphs (1) and (2) of subsection (b) shall be

translated into English. The court may require a translation into English of

additional documents.

38.     Section 1516 of the Bankruptcy Code provides guidance to the Court in applying

the requirements of section 1515.  Section 1516 states, in pertinent part

(a)     If the decision or certificate referred to in section 1515(b) indicates that the

foreign proceeding is a foreign proceeding and that the person or body is a foreign

representative, the court is entitled to so presume.

(b)     The court is entitled to presume that documents submitted in support of the

petition for recognition are authentic, whether or not they have been legalized.

-12-

39. As discussed more fully below, the Canadian Proceeding is entitled to recognition as a foreign main proceeding under chapter 15 of the Bankruptcy Code for the following reasons:

(a) The Canadian Proceeding is a foreign proceeding within the meaning of section 101(23) of the Bankruptcy Code because it is a judicial proceeding in a foreign country under a law relating to insolvency in which the assets and affairs of the debtor are subject to supervision by a foreign court, for the purpose of reorganization or liquidation;

(b) The Canadian Proceeding is a foreign main proceeding within the meaning of section 1502(4) of the Bankruptcy Code, because the Canadian Proceeding is pending in the location of MMA Canada's center of main interest;

(c) This case was commenced by a "person" within the meaning of section 101(41) of the Bankruptcy Code and a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code;

(d) The Chapter 15 Petition was filed in accordance with sections 1504, 1509, and 1515 of the Bankruptcy Code; and

(e) MMA Canada is Eligible for Relief under Chapter 15;

(f) Granting recognition of the Canadian Proceeding as a foreign main proceeding would not be manifestly contrary to a public policy of the United States, and is therefore required pursuant to section 1517 of the Bankruptcy Code.

40. Additionally, even if this Court were to determine that the Canadian Proceeding were a foreign nonmain proceeding (which the Monitor respectfully submits the Canadian Proceeding is not), recognition pursuant to section 1517 would be compelled.

-13-

41.    Moreover, recognizing the Canadian Proceeding would not be manifestly contrary

to the public policy of the United States, as prohibited by section 1506 of the Bankruptcy Code.

In fact, granting recognition will promote the U.S. public policy of respecting foreign

proceedings as articulated in, *inter alia*, sections 1501(a) and 1508 of the Bankruptcy Code and

further cooperation between courts to the maximum extent possible, as mandated by

section 1525(a) of the Bankruptcy Code.  Thus, the conditions for mandatory recognition of the

Canadian Proceeding under section 1517 of the Bankruptcy Code have been satisfied.

42.    In addition to recognition as a foreign main proceeding, the Monitor seeks an

order enforcing the Initial Order in the United States.  By the Initial Order, the Québec Court

expressly authorized the Monitor to seek such relief in this Court as necessary to give effect to

the Initial Order in the United States.  *See* Initial Order, ¶ 57.  Specifically, the Québec Court

requested this Court's assistance in the following provision, which is contained in both the Initial

Order and the Plan Sanction Order:

> [The Québec Court] requests the aid and recognition of any Court or
> administrative body in any Province in Canada and any Canadian federal
> court or administrative body and any federal or state court or
> administrative body in the United States of America and any court or
> administrative body elsewhere, to act in aid of and to be complementary to
> this Court in carrying out the terms of the Order [including the registration
> of this Order in any office of public record by any such court or
> administrative body or by any Person affected by this Order].[8]

Initial Order, ¶ 58; Plan Sanction Order, ¶ 126.

43.    Section 1525(a) of the Bankruptcy Code provides that, "[c]onsistent with

section 1501, the court shall cooperate to the maximum extent possible with a foreign court or a

foreign representative."  11 U.S.C. §§ 1525(a).  The Monitor believes that recognition of the

Canadian Proceeding and enforcement of the Initial Order is necessary to give effect to such

---

[8]  The bracketed language appears only in the Plan Sanction Order.

-14-

order in the United States.  Thus, in addition to the reasons set forth above, this Court should

enter an order pursuant to sections 1501 and 1525 of the Bankruptcy Code, and under well-

established principles of international comity.

## THE CHAPTER 15 PETITION

A.   **The Canadian Proceeding is a Foreign Proceeding for Purposes of Chapter 15**

44.   Bankruptcy Code section 101(23) provides in pertinent part, as follows:

> The term "foreign proceeding" means a collective judicial or administrative
> proceeding in a foreign country, including an interim proceeding, under a law
> relating to insolvency or the adjustment of debt in which proceeding the assets
> and affairs of the debtor are subject to control or supervision by a foreign court,
> for the purpose of reorganization of liquidation.

11 U.S.C. § 101(23).  The Canadian Proceeding under the CCAA provides a statutory means for

MMA Canada to restructure its business under the supervision of the Québec Court.  As such,

the Canadian Proceeding is a judicial proceeding in a foreign country under a law relating to

insolvency and adjustment of debt in which the assets and affairs of MMA Canada are subject to

control or supervision by the Québec Court for the purpose of reorganization or liquidation.

Indeed, since the passage of chapter 15, U.S. courts have recognized a number of Canadian

proceedings under the CCAA.  *See, e.g.*, In re Sino-Forest Corp., 13-10361(MG) (Bankr. D. Del.

April 15, 2013); In re Cinram Int'l Inc., Ch. 15 Case No. 12-11882 (KJC) (Bankr. D. Del. 2012);

In re Valle Foam Indus. (1995) Inc., Ch. 15 Case No. 12-30214 (Bankr. N.D. Ohio 2012); In re

White Birch Paper Co., Ch. 15 Case No. 10-31234 (DOT) (Bankr. E.D. Va. 2010); In re Nortel

Networks Corp., Ch. 15 Case No. 09-10164 (KG) (Bankr. D. Del. 2009); In re MuscleTech Res.

& Dev. Inc., Ch. 15 Case No. 06-10092 (Bankr. S.D.N.Y. 2006).  Accordingly, chapter 15 cases

involving proceedings under the CCAA concern a foreign proceeding within the meaning of

8284969_11.DOCX

section 101(23) of the Bankruptcy Code.[9]  Likewise, the Canadian Proceeding is entitled to recognition.

### B.     The Canadian Proceeding is a Foreign Main Proceeding

45.     The Bankruptcy Code provides that a foreign proceeding for which chapter 15 recognition is sought must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has its center of main interests.  11 U.S.C. § 1517(b)(1).  The term "center of its main interests" is not defined in chapter 15.  However, the Bankruptcy Code provides that, in the absence of evidence to the contrary, the debtor's registered office is presumed to be the center of the debtor's main interests.  11 U.S.C. § 1516(c); In re Tri-Continental Exch. Ltd., 349 B.R. 627, 635 (Bankr. E.D. Cal. 2006) ("In effect, the registered office (or place of incorporation) is evidence that is probative of, and that may in the absence of other evidence be accepted as a proxy for, 'center of main interests.').

46.     MMA Canada's center of main interests is in Québec, Canada.  As set forth above, the registered office of MMA Canada is located at 1959 Upper Water Street, Suite 800, Halifax, Nova Scotia.  Prior to the sale of its assets to RAH on June 30, 2014, substantially all of MMA Canada's assets and operations were in the province of Québec.  MMA Canada has been registered in the province of Québec pursuant to *An Act respecting the legal publicity of enterprises*, R.S.Q., c. P-44.1 (the "LPEA"), since November 14, 2002.  MMA Canada's primary place of business was in Québec, Canada, where it owned rail line.  Specifically, MMA Canada had a place of business at 191 Victoria Street in Farnham, Québec.  When it had operations, MMA Canada conducted business solely *in Canada, specifically in Québec.* MMA

---

[9]  In fact, under former section 304 of the Bankruptcy Code, the statutory predecessor to chapter 15, Canadian proceedings, including insolvency proceedings, were regularly granted comity.  *See, e.g.*, Smith v. Dominion Bridge Corp., 1999 WL 111465 at *3 (E.D. Pa. Mar. 2, 1999) ("As a sister common law jurisdiction, courts have consistently extended comity to Canadian Bankruptcy proceedings.").

Canada had its own employees,[10] substantially all of whom resided and performed their jobs in

the Province of Quebec.  All of MMA Canada's rail lines and buildings were located in Québec.

Additionally, MMA Canada maintains an account at the Canadian Imperial Bank of Commerce

in Toronto, Ontario.  As of the filing of this Verified Petition, that account had approximately

(CDN) $87,252 in it.  Accordingly, the Canadian Proceeding is pending in the center of main

interest of MMA Canada -- Quebec -- and constitutes a "foreign main proceeding" as defined in

section 1502(4) of the Bankruptcy Code.

47.    If MMA Canada is not found to have its center of main interests in Canada, then,

the Canadian Proceeding constitutes a "foreign nonmain proceeding" within the meaning of

section 1502(5) of the Bankruptcy Code because it is pending in a jurisdiction where MMA

Canada has an "establishment," a place where it carries out "nontransitory economic activity."

11 U.S.C. § 1502(2)(5); *see also* In re Fairfield Sentry Ltd., 2011 WL 4357421 *1, 10 n.8

(S.D.N.Y. Sept. 16, 2011) (granting main recognition but noting that nonmain recognition would

also be appropriate because the debtor "has an establishment [in the foreign country] for the

conduct of nontransitory economic activity, i.e. a local place of business.").  Accordingly,

although the Canadian Proceeding should be recognized as a main proceeding, the same facts

that support recognition as a main proceeding would also support nonmain recognition if for any

reason the Court were to decline to recognize the Canadian Proceeding as a main proceeding.

### C.    This Case Was Commenced by a Person who is a Foreign Representative

48.    The Monitor commenced this chapter 15 case.  The Monitor is the "foreign

representative" of MMA Canada, duly authorized in the Canadian Proceeding within the

---

[10]  Shortly after the Derailment, MMA Canada had 62 employees, of which 34 were active.  The balance had been temporarily laid off, were receiving benefits under the CSST (the Province of Quebec's worker's compensation program), or were not working because of a disability.  See, First Report of Monitor, Aug. 21, 2013.  http://www.richter.ca/en/folder/insolvency-cases/m/montreal-maine-and-atlantic-canada-co

meaning of section 101(24) of the Bankruptcy Code, which defines a "foreign representative" in

pertinent part as a "person or body . . . authorized in a foreign proceeding to administer the

reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of

such foreign proceeding." 11 U.S.C. § 101(24).

49.     The Québec Court authorized the Monitor to, *inter alia*, "*act as a 'foreign*

*representative'* of [MMA Canada] or in any other similar capacity in any insolvency, bankruptcy

or reorganization or other proceedings outside of Canada." Initial Order, ¶ 33(l) (emphasis

added).[11]

50.     Similarly, the Plan Sanction Order permits the Monitor to "*act as a foreign*

*representative*" of MMA Canada with authorization to apply to "any other court or

administrative body for an order recognizing the [CCAA Plan] and [Plan Sanction Order] and

confirming that the [same] are binding and effective." Plan Sanction Order, at ¶ 125 (emphasis

supplied). Under section 1516(a) of the Bankruptcy Code, the Court is entitled to presume that

the representative identified in the Initial Order and in the Plan Sanction Order is a "foreign

representative."

51.     By virtue of its appointment, the Monitor is a "foreign representative" within the

meaning of section 101(24) of the Bankruptcy Code. *See, e.g.*, In re Gandi Innovations

Holdings, LLC, 2009 WL 2916908 at *1 (Bankr. W.D. Tex. June 4, 2009) (finding that the

monitor appointed in CCAA proceeding was a person within the meaning of § 101(41) and a

duly appointed "foreign representative" within the meaning of § 101(24)). Furthermore, the

---

[11] In the Initial Order, the Québec Court also ordered, directed, and empowered the Monitor to monitor
MMA Canada's receipts and disbursements, assist MMA Canada in dealing with its creditors during the
operation of the stay, advise and assist MMA Canada in reviewing its business and opportunities for cost
reduction and revenue enhancement, assist MMA Canada in discussions and negotiations with creditors,
including creditors asserting claims arising out of or relating to the Derailment, and assist in any
insolvency proceedings commenced by any member of MMA Canada's corporate group in any foreign
jurisdiction. Initial Order at ¶ 33.

Court is entitled to presume under section 1516(a) that the foreign representative identified in the

Initial Order is a foreign representative.  11 U.S.C. § 1516(a) ("If the [Initial Order] indicates that

the foreign proceeding is a foreign proceeding and that the person or body is a foreign

representative, the court is entitled to so presume.").  In addition, this Court is aware of the role

of the Monitor as the foreign representative of MMA Canada and the Canadian Proceeding by

virtue of the cross-border insolvency protocol that has facilitated cooperation between this Court

and the Québec Court, pursuant to the *Order Adopting Cross-Order Insolvency Protocol* dated

September 4, 2013 [D.E. 168]. *See* Order at ¶ 3(a) (as used in the Protocol, the term "Estate

Representative," means the Trustee or the Monitor).

52.     Courts have consistently granted chapter 15 recognition of Canadian proceedings

in which the monitor appointed in the proceeding acted as its foreign representative in the United

States.  *See, e.g.,* In re Sino-Forest Corp., 13-10361 (MG) [D.E. 16] (Bankr. D. Del. April 15,

2013); Collins v. Oilsands Quest, Inc., 484 B.R. 593 (S.D.N.Y. 2012); In re Metcalfe &

Mansfield Alternative Investments, et al., 421 B.R. 685 (Bankr. S.D.N.Y. 2010); In re Nortel

Networks Corp., No, 09-10164 (KG) [D.E. 40] (Bankr. D. Del. Feb. 27, 2009); In re Muscletech

Research and Development Inc. et al., Nos. 06 CIV 538 and 539 (S.D.N.Y. March 2, 2006).

53.     Accordingly, the Monitor constitutes a "foreign representative" for purposes of

sections 101(24), 1515 and 1517.  Moreover, the Monitor is a "person" as that term is used in

section 101(41).

**D.      This Case was Commenced in Accordance with Sections 1504, 1509, at 1550
of the Bankruptcy Code**

54.     The Monitor properly commenced this case, as required by sections 1504 and

1509 of the Bankruptcy Code, by filing the Chapter 15 Petition for recognition of a foreign

proceeding under section 1515 (a), accompanied by all documents and information required by

section 1515(b) and (c).  *See* In re Bear Stearns High-Grade Structured Credit Strategies Master

Fund, Ltd., 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) ("A

Case under Chapter 15 is commenced by a foreign representative filing a petition for recognition

of a foreign proceeding under section 1515 of the Bankruptcy Code.").  Specifically, the

Monitor, as foreign representative, has provided the Court with (i) copies of the Initial Order and

the Plan Sanction Order, both of which affirm the existence of the Canadian Proceeding and

appointed the Monitor to act as foreign representative of MMA Canada in satisfaction of section

1515 (b) (2) and/or (3), and (ii) a statement (at the end of this Verified Petition) verifying that the

Monitor, as foreign representative, is not aware of any foreign proceedings with respect to MMA

Canada other than the Canadian Proceeding in satisfaction of section 1515(c).

     **E.**     **<u>MMA Canada is Eligible for Relief Under Chapter 15 of the Bankruptcy
Code</u>**

          **1.**     ***The Eligibility Requirements under Section 109(a) do not apply in
Chapter 15 Cases.***

     55.     Section 109(a) of the Bankruptcy Code states that "[n]otwithstanding any other

provision of this section, only a person that resides or has a domicile, a place of business, or

property in the United States, or a municipality, may be a debtor under this title."  Whether the

debtor eligibility requirements set forth in section 109(a) apply *at all* in chapter 15 cases has not

been decided in the First Circuit.  Based on the language and purposes of chapter 15, as well as

commentary from <u>Collier</u> and others, it appears very likely that the First Circuit would not apply

section 109(a) to chapter 15 cases.  Section 109 refers to eligibility requirements for debtors

under chapters 7, 9, 11, 12, and 13.  Section 109(a) contains general eligibility requirements that

apply to each of the chapter-specific requirements in the subsequent subsections of section 109.

Section 109 does not have a subsection relating to chapter 15 cases, nor does it mention

chapter 15 at all.  This is logical because section 1502 contains its own definition of "debtor" for purposes of chapter 15.  For purposes of chapter 15, the term "debtor" means "an entity that is the subject of a foreign proceeding."

56.    In contrast, the term "debtor" as used in section 109 is defined in section 101(13) to mean a "person or municipality concerning which a case under this title has been commenced."  Indeed, section 1511 permits a recognized foreign representative to commence a case under Title 11.  A recognized foreign representative can, for example, file a case under chapter 11.  If the Monitor wished to commence a case under Title 11, then MMA Canada would, indeed, need to meet the eligibility requirements under the applicable subsection of section 109, as well as section 109(a), which applies to all subsections.

57.    The Monitor, however, does not wish to commence a case under Title 11.  Rather, the Monitor wishes to be recognized as the foreign representative of MMA Canada, and to have the Canadian Proceeding recognized as a foreign proceeding.  Because chapter 15 contains its own definition of debtor, because section 109 does not mention chapter 15, and because neither a foreign representative nor the section 1502(1) "debtor" that is the subject of a foreign proceeding is a "debtor" as that term is used in section 109, section 109(a) does not apply in chapter 15 cases.

58.    Moreover, applying section 109(a) to chapter 15 cases would be to ignore the entire structure and purpose of chapter 15.  A chapter 15 case is not the equivalent of a "full" bankruptcy case.  "Cases brought under Chapter 15 are intended to be ancillary to cases brought in the debtor's home country, unless a full US bankruptcy case is brought under another chapter."  Glosband and Westbrook, *Chapter 15 Recognition in the United States: Is a Debtor*

-21-

*"Presence" Required?* Int. Insolv. Rev. Vol. 24: 28, 29 (2015)[12] (hereinafter, "Glosband &

Westbrook") (quoting House Report 109-31, pt. 1, 109th Cong., 1st Sess. (2005) at 106).

Section 1517 states that "an order recognizing a foreign proceeding *shall be entered* if (1) such

foreign proceeding . . . is a foreign main proceeding or a foreign nonmain proceeding . . .; (2) the

foreign representative applying for recognition is a person or body; and (3) the petition meets the

requirements of section 1515." 11 U.S.C. §1517(a) (emphasis added). As stated by Glosband &

Westbrook, "Chapter 15 requires no determination concerning the attributes or financial

circumstances of the debtor." Glosband & Westbrook at 29. This makes sense because a

chapter 15 debtor does not obtain bankruptcy relief in the United States. Id.

59.     In contrast to the foregoing analysis, the Second Circuit has held that a foreign

debtor needed to be an eligible debtor under section 109(a) of the Bankruptcy Code in order for

its foreign representative to achieve recognition by a U.S. Court under chapter 15. *See*,

Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet), 737 F.3d 238, 246-251 (2d

Cir. 2013).

60.     The Barnet decision has been sharply criticized and is unlikely to be followed by

other Circuits. *Collier on Bankruptcy* asserts that "the Barnet decision should not be followed

outside of the Second Circuit . . . ." 8 *Collier on Bankruptcy* ¶1501.03[3] (Alan N. Resnick &

Henry J. Sommer eds. 16th ed. 2014). *Collier* notes that "[t]he ruling in Barnet *clearly

misconstrues the intent of the statute* to focus on eligibility of the foreign proceeding, not of the

debtor, never mentions the direction of section 1508 to consider the international origin of

chapter 15 and does not follow the suggestion of the legislative history of section 1508 to consult

the Guide to Enactment." Id. at ¶1517.01 (emphasis added). Also, "the intent of chapter 15 was

---

[12] Published online 10 February 2015 in Wiley Online Library (wileyonlinelibrary.com). DOI:
10.1002\iir.1230.

to determine eligibility based on the attributes of the foreign proceeding, not of the debtor," Id. at ¶1501.03[3].

61.     In an unreported decision in the case of In re Bemarmara Consulting, S.A., No. 13-13037 (KG), (Bankr. D. Del. Dec. 17. 2013, (Gross, J.), [DE 38], the Delaware Bankruptcy Court stated that it did not agree with the Barnet decision, and further opined that the Third Circuit would not follow the ruling in Barnet.  Noting that the definition of "debtor" in section 1502 is different from the definition of "debtor" in section 109(a), the Court suggested that Congress did not intend section 109 to restrict eligibility for chapter 15 relief.  A transcript of the Bemarmara decision is attached hereto as Exhibit A for the Court's convenience.

62.     The Barnet decision was the catalyst for the Glosband & Westbrook article, which is sharply critical of the decision.  Glosband & Westbrook point out that "prior to Barnet, every chapter 15 decision by a Circuit Court of Appeals[13] . . . recited the requirements for recognition and none of them included section 109(a) among those requirements."  Moreover, unlike Barnet, all of those decisions discussed section 1508 (entitled "Interpretation")[14] and acknowledged the importance of considering the Model Law and Guide to Enactment[15] in interpreting individual provisions within chapter 15.

63.     Another commentator notes that the Barnet holding "is ill-suited for deciding the jurisdictional requirements for a chapter 15 case."  R. Adam Swick, *Section 109(a)'s*

---

[13]  *See* In re Condor Insurance Ltd., 601 F.3d 319, 321 (5th Cir. 2010); In re Ran, 607 F.3d 1017, 1020 – 21 (5th Cir. 2010); In re Vitro, S.A.B. de C.V., 701 F.3d 1031 (5th Cir. 2013); In re ABC Learning Centres Ltd., 728 F.3d 301, 304 (3d Cir. 2013); Jaffe v. Samsung, 737 F.3d 14 (4th Cir. 2013).

[14]  "In interpreting this chapter, the court shall consider its international origin, and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions."  11 U.S.C. § 1508

[15]  The Model Law on Cross-Border Insolvency was drafted by the United Nations Commission on International Trade Law (UNCITRAL).  The Model Law and Guide to Enactment can be found at http://www.uncitral.org/uncitral/en/uncitral_texts/insolvency/1997Model.html.

*Jurisdictional Requirements Applied to Chapter 15*, 33 American Bankr. Inst. J. 30, 92 (March

2014).

64.     The Delaware Court's decision in <u>Bemarmara</u>, as well as the thoughtful analyses

expounded by *Collier*, Glosband &Westbrook, and Swick are in accord with <u>In re Tri-</u>

<u>Continental Exchange Ltd.</u>, 349 B.R. 627, 632 (Bankr. E.D. Cal. 2006), in which the court stated,

in *dicta*, that a foreign debtor need not be eligible under section 109 and that the drafters of

chapter 15 anticipated the "possibility that an entity that is ineligible to be a debtor under the

Bankruptcy Code could be the subject of a chapter 15 proceeding" and defined "debtor" for

chapter 15 purposes broadly in section 1502(1)).

**2.     *Even if Section 109(a) Applies in Chapter 15 Cases, MMA Canada
meets the Eligibility Requirements thereunder because it has Property in
the United States.***

65.     <u>Barnet</u> is not the law of the First Circuit, but even if it were, to be eligible for

chapter 15 recognition and relief, a foreign debtor would have to have property or a place of

business in the U.S.  Because MMA Canada has property in the United States, it easily meets this

test.

66.     MMA Canada has the following property in the United States:

(a)     An interest in a $5,000 retainer paid to and being held by the Monitor's attorneys

– Verrill Dana LLP – which retainer was paid with funds from the account of

MMA Canada at the Canadian Imperial Bank of Commerce in Toronto, Ontario

(the "<u>Retainer Funds</u>").  The Retainer Funds are being held in Verrill Dana's

account at Bank of America in Portland, Maine.

(b) A claim against the MMA bankruptcy estate, as evidenced by a timely filed proof of claim (the "<u>Proof of Claim</u>") in the Chapter 11 Case, a copy of which is attached hereto as <u>Exhibit B</u>;[16]

(c) A claim to a portion of the cash being held on deposit by the Trustee in the United States, including $1 million paid by Federal Insurance (a/k/a Chubb Insurance) pursuant to a settlement with the so-called "Railworld Parties"[17] (the "<u>Chubb/Rail World Claim</u>")

(d) Rights in (including the right to designate) certain claims (the "<u>Carmack Claims</u>") against Canadian Pacific under the so-called "Carmack Amendment," which is a federal statute that imposes and governs certain aspects of carrier liability. See, 49 U.S.C. §§ 11706, 10501, and 15906, as well as regulations promulgated thereunder; and

(e) Pursuant to certain settlement agreements, rights in other assigned claims and causes of action against U.S.-based defendants, as well as certain assigned rights in insurance policies issued and payable within the U.S., including without limitation the insurance policy (the "<u>Great American Policy</u>") issued by Great American Insurance Company to MMA Canada and bearing policy number DML 9924  836 (the "<u>Great American Claims</u>").

---

[16]  The proof of claim, which was jointly filed with the Monitor, is in the amount of $748,182,730.67. MMA Canada's claims against MMA arise out of MMA's liabilities for the debts of MMA Canada under the Nova Scotia *Companies Act*.

[17]  The term "Rail World Parties" means: (a) Rail World Holdings, LLC; (b) Rail World, Inc.; (c) Rail World Locomotive Leasing LLC; (d) The San Luis Central R.R. Co.; (e) Pea Vine Corporation; (f) Montreal Maine & Atlantic Corp.; (g) LMS Acquisition Corp; (h) Earlston Associates, L.P.; and (i) each of the shareholders, directors, officers, members or partners of the foregoing (in such capacity only).

67.    As set forth in paragraph 5 *supra.*, MMA Canada is a Nova Scotia unlimited liability company, organized under the Nova Scotia *Companies Act*, R.S., c.81.  As such, its sole shareholder – MMA – has liability for certain of its unsatisfied obligations.  This forms the basis for the proof of claim filed by MMA Canada in the Chapter 11 Case.  MMA Canada's claim against MMA constitutes "property in the United States" for purposes of section 109(a).  With respect to the Chubb/Rail World Claims, the Trustee admits that MMA Canada has claims to a portion of certain funds the Trustee is holding in the United States arising out of settlements between the Trustee and MMA Canada on one hand and the Rail World Parties on the other hand.  Those funds include $1 million paid by Chubb to the Trustee for the benefit of its insureds -- the Rail World Parties -- in connection with settlement agreements reached with the Rail World Parties.

68.    The Carmack Claims involve claims under the Carmack Amendment originally held by World Fuel Services and its affiliates against Canadian Pacific arising out of the Derailment.  Indeed, World Fuel Services has submitted notices of claims against Canadian Pacific under the Carmack Amendment seeking to recover for all injuries associated with, and indemnification for all claims arising from, the Derailment.  CP has acknowledged World Fuel Services' Carmack claims against it in its 2014 10-K Report filed with the Securities and Exchange Commission, stating as follows:

> "CP has received two damage to cargo notices of claims from the shipper of the oil on the derailed train, Western Petroleum.  Western Petroleum  has submitted U.S. and Canadian notices of claims for the same damages and, under the Carmack Amendment (the U.S. Damage to cargo statute), seeks to recover for all injuries associated with, and indemnification for all claims arising from, the derailment."

CP Annual Report at 107.  A copy of the relevant pages of CP's Annual Report is attached hereto as Exhibit C.

-26-

69.     On or about June 8, 2015, MMA Canada, the Monitor and the Trustee entered into a Plan Support and Settlement Agreement (the "WFS Settlement") with World Fuel Services and nine of its affiliates (collectively, "WFS").  Under the WFS Settlement, which is subject to approval of both the Chapter 11 Plan and the CCAA Plan, WFS assigned to MMA Canada and the Trustee all rights held by WFS under the Carmack Amendment relating to the Derailment. The Carmack Claims are property of MMA Canada in the United States.

70.     Each of the foregoing – the Retainer Funds, the proof of claim, the Chubb/Rail World Claim, the Carmack Claims, and the Great American Claims -- is "property in the United States" for purposes of section 109 (a).  Accordingly, MMA Canada satisfies the requirements of section 109 (a).  *See, e.g.,* In re Octaviar Administration Pty., Ltd., 511 B.R. 361, 371-74 (Bankr. S.D.N.Y. 2014) (recognizing that rights to a retainer held by counsel in the U.S., as well as intangible assets such as causes of action are "property" for purposes of New York law and therefore "property" for purposes of section 109.); In re Zais Investment Grade Ltd. VII, 455 B.R. 839, 844-46 (Bankr. D.N.J. 2011) (finding that securities and funds in U.S. in which debtor claimed an interest sufficient, even if those funds were pledged as collateral and held by a trustee). *See also,* In re McTague, 198 B.R. 428, 432 (Bankr. W.D.N.Y. 1996) (finding that $194 in a bank account is sufficient, noting that Congress did not give the court discretion to examine the requisite quantity of property to determine eligibility to be a debtor under the Code).

71.     In summary, section 109(a) should not be found to limit eligibility in chapter 15 cases, but even if it did MMA Canada satisfies the requirements because it has property in the United States, consisting of (without limitation) an interest in a retainer paid to MMA Canada's attorney in the United States, a claim against the United States bankruptcy estate of MMA (as evidenced by a timely filed proof of claim), a claim to proceeds from the sale to RAH, which

proceeds are currently being held by the Trustee in the United States, and claims against CP

under the Carmack Amendment. Moreover, MMA Canada is no longer a "railroad" as defined

in the Bankruptcy Code. Accordingly, MMA Canada meets the requirements for chapter 15

recognition and relief.

### 3.    *MMA Canada is Not a Railroad as Defined in the Bankruptcy Code*

72.    MMA Canada is eligible for relief under chapter 15 of the Bankruptcy Code.

Section 1501(c) states that chapter 15 does not apply to entities identified by exclusion in

section 109(b) of the Bankruptcy Code. Among the entities identified by exclusion in section

109(b) are "railroads." 11 U.S.C. § 109(b)(1). MMA Canada is not, however, a "railroad" for

purposes of section 1501(c)(1) as it has not been a railroad under the Bankruptcy Code from and

after June 30, 2014 (i.e., the date its assets were sold).

73.    Section 101(44) of the Bankruptcy Code provides that "[t]he term 'railroad'

means common carrier by railroad engaged in the transportation of individuals or property or

owner of trackage facilities leased by such a common carrier." 11 U.S.C. § 101(44). As set

forth above, on June 30, 2014, MMA Canada sold all of its operating assets. Thereafter, MMA

Canada no longer hauled freight, no longer owned trackage or facilities of any kind, and had

none of the insurance coverage required for operation of a railroad. MMA Canada could not

legally operate its business without a Certificate of Fitness issued by the Canadian

Transportation Authority (the "CTA"). In order to maintain its Certificate of Fitness, MMA

Canada needed to maintain specified minimum levels of insurance coverage, as well as

demonstrate the ability to fund any self-insured portion of such coverage. On August 20, 2013,

the CTA suspended MMA Canada's Certificate of Fitness, effective August 20, 2013. Through

a series of proceedings involving the CTA, MMA Canada was ultimately able to retain its

Certificate of Fitness through to the closing on the sale of its operating assets to RAH on

June 30, 2014.  Significantly, MMA Canada's insurance coverage, as well as its Certificate of

Fitness, expired as of the June 30, 2014 closing.  In light of the foregoing, from and after

June 30, 2014, MMA Canada has not been a "railroad" as defined in the Bankruptcy Code or

otherwise.

74.     The only relevant inquiry is whether MMA Canada was a "railroad" when it filed

its chapter 15 petition.  *Cf.* In re Eureka S. R. Co., Inc., 177 B.R. 323, 324 (Bankr. N.D. Cal.

1995) (holding that the case of a former railroad may be converted to a proceeding under chapter

7 of the Bankruptcy Code "[s]ince the debtor is not now a railroad [after the sale of its assets],

and since section 109(b) does not specify the petition date as the date for determining eligibility,

and since section 1112 applies to railroad reorganization cases, the court concludes that this case

can be converted to Chapter 7.").  Likewise, courts have consistently held that a former common

carrier by rail that no longer transports people or freight, or owns trackage, at the time of the

filing of the bankruptcy petition, is not a "railroad" under section 101(44) (or its statutory

predecessors).  *See*, e.g.,  Hileman v. Pittsburgh & Lake Erie Props., Inc. (In re Pittsburgh &

Lake Erie Props., Inc.), 290 F.3d 516 (3d Cir. 2002) (In assessing whether railroad provisions of

chapter 11 applied, court found that an entity that had abandoned the transport of goods and

people did not "on the most natural reading of this language concern a railroad; it concern[ed] a

*former* railroad.") (emphasis added); Wheeling-Pittsburgh Steel Corp. v. McCune, 836 F.2d 153

(3d Cir. 1987) (central issue was whether debtor which had been a common carrier currently met

the Bankruptcy Code definition of "railroad;" court found that in light of state supreme court's

finding that debtor was no longer a common carrier, debtor no longer met the bankruptcy code

definition of railroad even though regulatory agency had not formally decertified the debtor's

status as common carrier); <u>In re Wheeling-Pittsburgh Steel Corp.</u>, 155 B.R. 351 (Bankr. W.D.

Pa. 1993) (holding that a state statute providing for protection of railroad employees did not

apply to an entity that had already ceased operations as a carrier at time of its bankruptcy filing).

This is all in accord with courts examining eligibility under section 109 of the Bankruptcy Code

in other contexts.  <u>See, e.g.</u>, <u>In re Global Ocean Carriers Ltd.</u>, 251 B.R. 31, 37 (Bankr. D. Del.

2000) ("The test for eligibility [under section 109(a)] is as of the date the bankruptcy petition is

filed."); <u>In re Town of Westlake, Tex.</u>, 211 B.R. 860 (Bankr. N.D. Tex. 1997) ("Reference date

for determining municipal debtor's insolvency, for purpose of assessing debtor's eligibility for

Chapter 9 relief, is date that Chapter 9 petition is filed.); <u>In re New York City Off-Track Betting</u>

<u>Corp.</u>, 427 B.R. 256, 271 (Bankr. S.D.N.Y. 2010) ("Insolvency is analyzed from the date of the

petition."); <u>In re Sullivan Cnty. Reg'l Refuse Disposal Dist.</u>, 165 B.R. 60, 75 (Bankr. D.N.H.

1994) (In determining whether a chapter 9 debtor met the insolvency test for eligibility described

in section 109(c)(3), the court stated that "[t]he reference point of the analysis is the date of

petition.")

### 4.    *MMA Canada is Not a Railway Company Under the CCAA*

75.    Moreover, as asserted by MMA Canada in the *Amended Petition for Issuance of*

*an Initial Order* dated August 8, 2013 (which was granted by entry of the Initial Order), MMA

Canada was never a "railway company" under Canadian law.  As described above, MMA

Canada operated as a shortline freight railway carrier within Québec and held a certificate of

fitness under the *Canada Transportation Act*, S.C. 1996, c. 10.  However, MMA Canada was not

constituted as a railway company by charter or under special legislation (such as under railway

acts); it was constituted as an "ordinary" company under the Nova Scotia *Companies Act*, as stated above.[18]

76.    Although the CCAA, like the Canadian *Bankruptcy and Insolvency Act* and the *Winding Up and Restructuring Act*, excludes "railway companies" from the definition of "company," historically, these statutes referred to railway companies created and governed by specific railway legislation or charter.  Therefore, as also asserted by MMA Canada in the *Amended Petition for Issuance of an Initial Order*, these statutes do not exclude a company incorporated by ordinary corporate legislation that may operate as a freight railway carrier such as in the case of MMA Canada

77.    In accord with the provisions of the CCAA, as the Québec Court expressly found in paragraph 4 of the Initial Order, MMA Canada was and is a company to which the CCAA applies.  Initial Order, at ¶ 4 ("[the Québec Court] declares that the Petitioner [MMA Canada] is a debtor company to which the CCAA applies.").  The Québec Court re-confirmed this finding in the Plan Sanction Order.  Plan Sanction Order, at ¶ 83(a) ("[MMA Canada] is a debtor company to which the CCAA applies . . .").

78.    Although "railroads" are excluded from chapter 15 by section 1501(c)(1), the term "railroads" should be defined under applicable foreign, rather than U.S. law.  The Québec Court, applying the applicable foreign law in this case -- Canadian law -- determined that MMA Canada was a debtor to which the CCAA applied.[19]  Since the CCAA excludes railway companies, implicit in the Initial Order's finding that the CCAA applies is a finding that MMA Canada is not a railway company.  This determination of the Québec Court, set forth in the Initial

---

[18]  *See* ¶5, *supra*.  Additionally, the Railways Act of Nova Scotia, SNS 1993, c. 11 (the purpose of which is to ensure the safe operation of railways in the province of Nova Scotia) likely only applies to companies which operate, or intend to operate, railways within the province of Nova Scotia; thus the statute does not apply to MMA Canada.

[19]  Initial Order, at ¶ 4; Plan Sanction Order, at ¶ 83(a)

-31-

Order and confirmed by the Plan Sanction Order, should be respected in determining whether

MMA Canada is eligible under chapter 15.  In the interest of comity, the findings of the Québec

Court, as well as its interpretation of Canadian law, should be applied in this case.  *See* 11 U.S.C.

§ 1508 ("In interpreting this chapter, the court shall consider its international origin, and the need

to promote an application of this chapter that is consistent with the application of similar statutes

adopted by foreign jurisdictions.")

79.     Finally, and as set forth above, even if MMA Canada was at one time a railroad

(under the Code or the CCAA), it is beyond dispute that, following the sale of its assets on

June 30, 2014, it is no longer a "railroad" for purposes of section 109(b) and is not disqualified

from eligibility for chapter 15 relief under § 1501(c)(1).

**F.     Granting Recognition would not be Manifestly contrary to a Public Policy of
the United States**

80.     This Court's recognition of the Canadian Proceeding (and enforcing the Initial

Order in the United States) would not be manifestly contrary to the public policy of the United

States as prohibited by section 1506 of the Bankruptcy Code.  11 U.S.C. § 1506 ("Nothing in this

chapter prevents the court from refusing to take an action governed by this chapter if the action

would be manifestly contrary to the public policy of the United States.").  To the contrary,

granting such recognition furthers the U.S. public policy respecting foreign proceedings as

articulated, among other ways, through the objectives set forth in sections 1501(a) and 1508 of

the Bankruptcy Code.  As noted above, Canadian proceedings under the CCAA have routinely

been granted recognition by courts in the United States.  Therefore, the introductory language to

section 1517 of the Bankruptcy Code is satisfied, and no basis exists for the Court to refuse

recognition pursuant to section 1506 of the Bankruptcy Code.

**ENFORCEMENT OF THE INITIAL ORDER IS APPROPRIATE**

**A.    The Monitor is Entitled to an Order Granting Recognition and Enforcing the Initial Order and the Plan Sanction Order Pursuant to Section 1517**

81.    The Monitor also seeks enforcement in the United States of the Initial Order of the Québec Court.  The Initial Order provides MMA Canada with relief that is similar to and consistent with the relief that is available automatically under the Bankruptcy Code to chapter 11 debtors.  Specifically, the Initial Order provides MMA Canada with, *inter alia*:

(a)    Stay relief to protect business and property;

(b)    Protection of its contractual rights from the possibility **of** termination, discontinuance, alteration, or interference;

(c)    The authority to remain in possession and control of its assets and operate its business;

(d)    The authority to restructure its business; and

(e)    The authority to file a plan of compromise or arrangement between, *inter alia*, MMA Canada and one or more classes of its creditors.

In addition, the Initial Order provides relief, such as injunctive relief to protect the former and current directors and officers of MMA Canada and their insurers and the ability to pay certain prepetition obligations.  This relief is consistent with the relief often granted to chapter 11 debtors under the bankruptcy court's broad equitable powers under section 105(a) of the Bankruptcy Code.

**B.    Principles of Comity Embodied in Chapter 15 Strongly Favor Enforcement of the Initial Order**

82.    Upon recognition of the Canadian Proceeding as a "foreign main proceeding," longstanding principles of international comity embodied in chapter 15 heavily weigh in favor of

-33-

enforcing the Initial Order in the United States.  "American courts have long recognized the need

to extend comity to foreign bankruptcy proceedings."  <u>Victrix S.S., Co., S.A. v. Salen Dry Cargo</u>

<u>A.B.</u>, 825 F.2d 709, 713 (2d Cir. 1987).  The definition of comity comes from a Supreme Court

case granting enforcement to a judgment obtained by a foreign bankruptcy trustee:

> "Comity" . . . is recognition which one nation allows within its territory to the
> legislative, executive or judicial acts of another nation, having due regard both to
> international duty and convenience, and to the rights of its own citizens or of
> other persons who are under the protection of its laws.

<u>Hilton v. Guyot</u>, 159 U.S. 113, 163-164 (1895).

83.     Accordingly, granting comity to judgments in foreign proceedings is appropriate

as long as parties are provided the fundamental protections assured to litigants in the United

States.  *See* <u>id.</u> at 202-03 (applying comity analysis to French judgment obtained by foreign

liquidator against U.S. citizens, and finding it was "satisfied that [ ] there has been opportunity

for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon

regular proceedings, after due citation or voluntary appearance of the defendant, and under a

system of jurisprudence likely to secure an impartial administration of justice between the

citizens of its own country and those of other countries . . . .").

84.     Furthermore, the importance of granting comity is heightened in the insolvency

context because the collective nature of insolvency proceedings requires that "the assets of a

debtor are dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard,

erratic, or piecemeal fashion.  Consequently, American courts have consistently recognized the

interest of foreign courts in liquidating or winding up the affairs of their own domestic business

entities."  <u>Cunard S.S. Co., Ltd. v. Salen Reefer Services AB</u>, 773 F.2d 452, 456-58 (2d Cir.

1985).  Accordingly, in considering judgments rendered by foreign courts in insolvency matters,

comity may be withheld only if its extension would cause American creditors to be "treated in some manner inimical to this country's policy of equality." Id. at 459.

85.     The purpose of chapter 15 is to continue and enhance the United States' long history of granting comity in cross-border insolvency proceedings. *See* 11 U.S.C. § 1501; In re Atlas Shipping A/S, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009) (chapter 15 "specifically contemplates that the court should be guided by principles of comity and cooperation with foreign courts in deciding whether to grant the foreign representative additional post-recognition relief."); 11 U.S.C. § 1525 ("[T]he [ancillary] court shall cooperate to the *maximum extent possible* with a foreign court") (emphasis added); 11 U.S.C. § 1509(b) ("If the court grants recognition under section 1517, and subject to limitations that the court may impose consistent with the policy of this chapter . . . (3) a court in the United States *shall* grant comity or cooperation to the foreign representative.") (emphasis added).

86.     Comity is appropriate here because the Initial Order sought to be enforced was issued by a court of competent jurisdiction in Canada.  United States courts consistently note that orders emanating from a common law jurisdiction akin to that of the United States are particularly deserving of comity.  *See* In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd., Inc., 238 B.R. 25, 67 (Bankr. S.D.N.Y. 1999), *aff'd*, 238 B.R. 699 (S.D.N.Y. 2002) ("[W]hen the foreign proceeding is in a sister common law jurisdiction with procedures akin to our own, comity should be extended with less hesitation, there being fewer concerns over the procedural safeguards employed in those foreign proceedings." (internal quotations and citations omitted)).

87.     Accordingly, the principles of international comity embodied in chapter 15 weigh strongly in favor of enforcement of the Initial Order.

-35-

## NOTICE

88.     The Monitor requests a finding that service and notice of hearing on this Chapter 15 Petition given in the following manner to the following persons be approved as adequate and sufficient pursuant to Bankruptcy Rules 2002(q), 2002(m), 9007, and 9008: service by United States mail and/or Canadian mail (as appropriate), first-class postage prepaid or by overnight courier, or by e-mail if authorized by the relevant creditor or party and by publication of notice in *The Wall Street Journal* (National Edition) and *The Globe and Mail* (Canada), upon (a) all known U.S.-based creditors or their counsel, (b) the Office of the United States Trustee for the District of Maine, (c) counsel to the Creditors' Committee in the Chapter 11 Case, (d) all parties (or their counsel) to any litigation pending in the United States or Canada to which MMA or MMA Canada is a party or has been a party at any time since August 6, 2013, including without limitation counsel in the wrongful death cases arising out of the Derailment and counsel to the plaintiffs in the class action case filed in Québec, (e) all parties that request or have requested notice pursuant to Bankruptcy Rule 2002, (f) all Released Parties, (g) all known Canadian-based creditors, or their counsel.  The Monitor requests that the foregoing be approved as adequate and sufficient notice of the Chapter 15 Petition and the hearing thereon under Bankruptcy Rules 2002, 9007, and 9008.

## CONCLUSION

As evidenced above, the Canadian Proceeding is a "foreign main proceeding" within the meaning of section 1502 of the Bankruptcy Code.  Additionally, the Monitor is a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code, and the Chapter 15 Petition meets the requirements of section 1515 of the Bankruptcy Code with respect to MMA Canada.  Accordingly, the Monitor respectfully submits that the Court is required to

enter an order recognizing the Canadian Proceeding pursuant to section 1517 of the Bankruptcy Code.

WHEREFORE, the Monitor respectfully requests that this Court grant this Chapter 15 Petition and enter an Order: (a) recognizing the Canadian Proceeding as a "foreign main proceeding" pursuant to section 1517 of the Bankruptcy Code and as defined in section 1502(4) of the Bankruptcy Code; (b) giving full force and effect in the United States to the Initial Order; (c) granting the Canadian Proceeding relief afforded foreign main proceedings automatically upon recognition, pursuant to section 1520 of the Bankruptcy Code, including, without limitation, imposition of the stay under section 362 and application of section 363 of the Bankruptcy Code; or, alternatively, if not as of right under section 1520 of the Bankruptcy Code, then pursuant to sections 1521, 1507, and 105(a) of the Bankruptcy Code, as applicable; and (d) granting such other and further relief as is appropriate under the circumstances.

Dated:  July 20, 2015                    RICHTER ADVISORY GROUP INC.,
                                         MONITOR AND FOREIGN REPRESENTATIVE
                                         OF MONTREAL MAINE & CANADA CO.

                                         By its attorneys:

                                         /s/ Roger A. Clement, Jr.
                                         Roger A. Clement, Jr., Esq
                                         Nathaniel R. Hull, Esq.
                                         VERRILL DANA LLP
                                         One Portland Square
                                         P.O. Box 586
                                         Portland, ME  04112-0586
                                         207-774-4000 – Phone
                                         207-774-7499 – Fax
                                         rclement@verrilldana.com
                                         nhull@verrilldana.com
                                         bankr@verrilldana.com

-37-

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, Andrew Adessky declares as follows:

I am a duly authorized agent of Richter Advisory Group Inc., which was appointed as the monitor and authorized to act as foreign representative of Montreal, Maine & Atlantic Canada Co. by the Québec Superior Court (Commercial Division).  I have full authority to verify the foregoing *Verified Petition for Recognition of Foreign Proceeding and Related Relief* (the "Chapter 15 Petition").  Pursuant to section 1515(c) of the Bankruptcy Code, I hereby state that I am unaware of any foreign proceedings with respect to the debtor other than the Canadian Proceeding.  I have read the foregoing Chapter 15 Petition, and am informed and do believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  July 20, 2015

  _/s/Andrew Adessky_____
Andrew Adessky, CPA, CA, CIRP, MBA
Richter Advisory Group Inc.

8284969_11.DOCX

### EXHIBIT LIST

**Exhibit A** - Transcript of <u>Bemarmara</u> Decision

**Exhibit B** - Proof of Claim in the Chapter 11 case

**Exhibit C** - Relevant pages of CP's Annual Report

**Notice:**   To eliminate waste and unnecessary expense, some or all of the Exhibits (and/or exhibits and schedules to the Exhibits) may not be attached.  A copy of any Exhibit (including all exhibits and schedules) may be obtained by sending an e-mail request to <u>mhenderson@verrilldana.com</u> or <u>pnoyes@verrilldana.com</u> or by calling Marilyn Henderson or Pam Noyes at 207-774-4000.

Alternatively, most Exhibits may be found on the website of the Monitor – – Richter – – using the following link: <u>http://www.richter.ca/en/folder/insolvency-cases/m/montreal-maine-and-atlantic-canada-co</u> .

All pleadings, with Exhibits, may be viewed and are on file at the Clerk's office, United States Bankruptcy Court, 202 Harlow Street, Bangor, Maine.